IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL TODD BEAUTY LP, | ) |
| | ) C.A. No. _____ |
| Plaintiff, | ) |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| RHINOSYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Michael Todd Beauty LP ("MTB") by and through its undersigned counsel, files this Complaint against Defendant RhinoSystems, Inc. ("RhinoSystems") seeking declaratory judgment relief of non-infringement and invalidity of U.S. Patent No. 12,178,953 (the "'953 Patent"). In support of this Complaint, Plaintiff alleges as follows:

**PARTIES**

1. MTB is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 584 NW University Blvd., Suite 600, Port St Lucie, Florida 34986. MTB is engaged in the nationwide sale of a nasal irrigation device under the name NasalFresh MD® (the "NasalFresh Device"). MTB sells the NasalFresh Device through its own website (www.nasalfreshmd.com), through the websites of various online retailers, including Amazon.com, Inc. ("Amazon") through its online marketplace, and in the stores of various retailers, including CVS Health ("CVS"), among others.

2. Upon information and belief, RhinoSystems is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 1 American

Rd., Suite 1100, Brooklyn, Ohio 44144. RhinoSystems is engaged in the sale of its Navage® nasal irrigation device and is further the owner of all rights in the '953 Patent.

## NATURE OF THE ACTION

3. This is a civil action for declaratory judgment of non-infringement and invalidity of the '953 Patent, arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

4. RhinoSystems made an assertion to Amazon, an on-line retailer of MTB's NasalFresh Device, that the NasalFresh Device infringes the '953 Patent and demanded that Amazon remove the NasalFresh Device listings from its website.

5. On May 27, 2025, RhinoSystems initiated a procedure against MTB under Amazon's Patent Evaluation Express ("APEX") Procedure, by submitting a signed APEX Agreement to Amazon. A copy of Amazon's APEX Procedure is attached as **Exhibit A**, and a copy of RhinoSystems' executed APEX Agreement is attached as **Exhibit B**.

6. Under the APEX Procedure, a neutral evaluator reviews the asserted patent infringement claim against third-party product listings on Amazon.com, and makes a determination whether the products of the accused product listings likely infringe the asserted patent. If the evaluator concludes that the products of the accused product listings likely infringe the asserted patent, Amazon will remove the accused product listings from its website.

7. Amazon further notified MTB that if MTB declined to participate in the APEX Procedure or failed to resolve the dispute with RhinoSystems, then Amazon would remove the accused product listings for the NasalFresh Device from its website. A copy of the May 28, 2025, email from Amazon to MTB is attached as **Exhibit C**.

8.     RhinoSystems knew that by submitting to Amazon a signed APEX Agreement, Amazon would notify MTB of RhinoSystems' initiation of the APEX Procedure and would further advise MTB of its options and of the potential for Amazon's removal of the NasalFresh Device listings from its website.

9.     RhinoSystems' commencement of the APEX Procedure has caused MTB to incur costs and expenses in defending against RhinoSystems' infringement allegations, and a decision by Amazon to remove MTB's listing for the NasalFresh Device would cause additional economic, reputational, and other harm to MTB.

10.    Further, on May 19, 2025, RhinoSystems, through its counsel, wrote to CVS asserting that the NasalFresh Device infringed the '953 Patent. A copy of RhinoSystems' May 19, 2025, correspondence to CVS is attached hereto as **Exhibit D**.

11.    RhinoSystems' May 19 correspondence to CVS demanded that CVS agree to cease and desist from selling or offering for sale MTB's NasalFresh Device. RhinoSystems further stated that it is prepared to take actions to enforce the '953 Patent against sellers of MTB's NasalFresh Device.

12.     CVS has informed MTB that CVS is evaluating RhinoSystems' infringement allegations.

13.    Additionally, pursuant to MTB's Supplier Indemnification Agreement with CVS, MTB is obligated to defend and indemnify CVS against, *inter alia*, any and all liabilities, losses, claims, demands, costs, and expenses incurred by CVS as a result of any claims asserted by RhinoSystems against CVS arising out of the continued sale of the NasalFresh Device.

14.    CVS has demanded that MTB provide indemnification pursuant to the Supplier Indemnification Agreement.

15. RhinoSystems' infringement allegations against CVS have caused MTB to incur costs and expenses in defending against the allegations, and a decision by CVS to cease sales of MTB's NasalFresh Device would cause MTB additional economic, reputational, and other harm.

16. RhinoSystems' assertions of MTB's alleged infringement of the '953 Patent, its initiation of Amazon's APEX procedure that could result in the loss of sales of MTB's NasalFresh Device, and its demand that CVS cease and desist from selling MTB's NasalFresh Device all give rise to an actual and justiciable controversy between MTB and RhinoSystems.

17. Absent a declaration that MTB does not infringe the '953 Patent and/or that the '953 Patent is invalid, MTB will continue to suffer economic, reputational, and other harm as a result of RhinoSystems' actions.

## JURISDICTION AND VENUE

18. As this is a civil action for declaratory judgment of patent non-infringement and patent invalidity, arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

19. This Court has personal jurisdiction over RhinoSystems because, on information and belief, RhinoSystems conducts substantial business in, and has regular systematic contact with, this District. On information and belief, RhinoSystems, directly or indirectly, markets and/or sells products, including but not limited to its Navage® product, throughout the United States, including in this District.

20. On information and belief, RhinoSystems purposefully has conducted, and continues to conduct, substantial business in this District, including the solicitation of business

from, and sale of products to, Delaware residents, and derives revenue from such goods provided to customers in Delaware.

21. In addition, this Court has personal jurisdiction over RhinoSystems as a result of RhinoSystems' assertion made to Amazon that MTB's NasalFresh Device infringes the '953 Patent and the initiation of Amazon's APEX procedure, intending that its infringement assertions and the initiation of the APEX procedure would result in the loss of MTB's sales of its NasalFresh Device in this District. This Court also has personal jurisdiction over RhinoSystems as a result of RhinoSystem's assertions made to CVS that MTB's NasalFresh Device infringes the '953 Patent and its demand that CVS cease and desist from selling or offering for sale MTB's NasalFresh Device, all with the intent to cause harm to MTB in this District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE '953 PATENT

23. The '953 Patent issued on December 31, 2024, and is assigned on its face to RhinoSystems. A true and correct copy of the '953 Patent is attached as **Exhibit E**.

24. The '953 Patent is entitled "Nasal Irrigation Device and System With Faux Collapsible Cartridge Element," and is one of several patents in a family that claims priority to U.S. Pat. App. No. 61/508,767, filed July 18, 2011.

25. The '953 Patent is directed to a nasal irrigation device that communicates an irrigant to a device user.

26. The '953 Patent includes 20 total claims, with claims 1 and 10 being the only independent claims.

## COUNT I
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 12,178,953)

27. MTB repeats and realleges Paragraphs 1 through 26 of this Complaint.

28. MTB has not infringed and does not infringe at least Claims 1 and 10, the only independent claims, of the '953 Patent, directly, contributorily, or by inducement, literally or under the doctrine of equivalents, individually or jointly, including through the making, use, importation into the United States, sale, and/or offer for sale of the NasalFresh Device. Because MTB does not infringe Claims 1 and 10 of the '953 Patent, it does not infringe any other claim that depends from either Claim 1 or Claim 10 of the '953 Patent.

29. The '953 Patent issued from U.S. Patent Application No. 18/824,125, which was filed on September 4, 2024. As reported on the face of the '953 Patent, the '125 Application was a continuation of U.S. Patent Application No. 17/860,601, which was a continuation-in-part of U.S. Patent Application No. 16/543,920, which was a continuation of U.S. Patent Application No. 15/783,730, which was a divisional of U.S. Patent Application No. 13/551,274, which claims the priority benefit of U.S. Provisional Patent Application No. 61/508,767, filed July 18, 2011.

30. Claim 1 of the '953 Patent reads as follows:

> 1. A nasal irrigation device for communicating an irrigant to a device user, the device comprising:
>
> a first reservoir for receiving the irrigant;
>
> a second reservoir;
>
> an openable lid, wherein the first reservoir is disposed about the lid;
>
> a fluid passageway for communicating the irrigant from the first reservoir to the second reservoir via a nasal cavity of the device user;
>
> a vacuum source for forming a relative vacuum in at least a portion of the fluid passageway;

> a valve for releasing the irrigant from the first reservoir to the fluid passageway; and
>
> a switch for controlling at least the vacuum source.

31. Claim 10 of the '953 Patent reads as follows:

> 10. A nasal irrigation device for communicating an irrigant to a device user, the device comprising:
>
> a mechanics module housing;
>
> a first reservoir for receiving the irrigant;
>
> a second reservoir;
>
> an openable lid assembly surrounded by the first reservoir;
>
> a fluid passageway to communicate the irrigant from the first reservoir to the second reservoir via a nasal cavity of the device user, the fluid passageway passing through a portion of the mechanics module housing;
>
> a vacuum source for forming a relative vacuum in at least a portion of the fluid passageway;
>
> a valve for releasing the irrigant from the first reservoir to the fluid passageway; and
>
> a switch assembly for controlling at least the vacuum source for the communicating of the irrigant to the device user.

32. Claims 1 and 10 each include a "lid" limitation. Specifically, Claim 1 recites "an openable lid, wherein the first reservoir is disposed about the lid," and Claim 10 recites "an openable lid assembly surrounded by the first reservoir."

33. The NasalFresh Device does not satisfy the limitation of Claim 1 that recites "an openable lid, wherein the first reservoir is disposed about the lid" or the limitation of Claim 10 that recites "an openable lid, wherein the first reservoir is disposed about the lid," as those terms would have been understood by a person of ordinary skill in the art at the time of the alleged invention in light of the specification and prosecution history of the '953 Patent (and the prosecution histories of the applications to which the '953 Patent claims priority).

34. A person of ordinary skill in the art at the time of the alleged invention of the '953 Patent would have understood from the specification of the '953 Patent and prosecution history of the '953 Patent (and the prosecution histories of the applications to which the '953 Patent claims priority) that the "lid" limitations of Claims 1 and 10 would refer to (1) a hinged lid assembly; (2) that is interoperable with other components to open a capsule when the lid is closed; and (3) that is fully surrounded by the upper/first reservoir, which is a separate component.

35. For example, the '953 Patent is clear that the point of novelty of the disclosed and claimed nasal irrigation system was its use of a disposable cartridge concentrate supply. Specifically, the specification states the following with respect to Figure 1 of the '953 Patent:

> *[T]he subject delivery system is <u>novel</u> in that it uses a disposable cartridge concentrate supply for enhanced portability of the tool as opposed to a device that would require a bottle of saline solution*. Such known systems have used ready-made supply bottles, or mixing of salt packs in squeeze bottles or neti pots. The irrigation device A is comprised of three principal components, a mechanics module assembly 10, an upper reservoir assembly 12 and a lower reservoir assembly 14. … Saline mix to form an isotonic saline solution for the irrigating results from water being poured into the upper reservoir 12 through opening of the *hinged lid 26*, and the insertion of a saline concentrate capsule (FIG. 5) so that *upon closing of the lid, the concentrate falls into mixture with the water*.

('953 Patent at 3:53–61, 4:8–13 (emphasis added).)

36. In addition, the "openable lid" is described and depicted as a component of the mechanics module. For example, the specification states that "[t]he mechanics module assembly 10 is seen to include a cartridge or capsule tower assembly 40 having the openable and closeable lid 26 to permit a disposable cartridge B, see FIG. 5, to be received within the tower." ('953 Patent at 4:31–34.)

37. Also, the specification of the '953 Patent interchangeably refers to element 26 as the "hinged lid 26," the "openable and closeable lid 26," and simply the "lid 26." (*See, e.g.*, '953 Patent at 4:10, 4:32-35, 5:19, and 5:21.) Accordingly, a person of ordinary skill in the art at the time of the alleged invention would have understood that the claimed "openable lid" is attached to the device (and, in particular, the mechanics module) in a hinged manner, so that it may be opened and closed.

38. This understanding is further confirmed by the prosecution history of the applications that ultimately resulted in the '953 Patent. For example, throughout prosecution of the various applications it was clear that the claimed lid is part of the mechanics module (and the capsule tower portion of the mechanics module in particular).

39. Furthermore, as a further example, the specification of the '953 Patent is clear that the upper reservoir (claimed in the '953 Patent as the "second reservoir") is separate from and surrounds the capsule tower that comprises the claimed "openable lid" and "openable lid assembly". Also, the specification describes the mechanics module and the upper reservoir, separately, as two of the three primary components of the alleged invention. ('953 Patent at 3:58–61.)

40. The significance of the spatial relationship between the mechanics module (and the claimed "openable lid" and "openable lid assembly" in particular) and the upper reservoir was emphasized throughout prosecution of the applications that ultimately resulted in the '953 Patent. For example, to secure allowance of the '125 Application that yielded the '953 Patent, the Applicant agreed to Examiner Amendments to more distinctly claim the nasal irrigation device, wherein the Examiner explained: "The phrase 'disposed about the lid', as recited in Claim 21 [which issued as Claim 1 of the '953 Patent], is held to comprise similar subject matter to the

phrase 'surrounded by the first reservoir', whereby 'disposed about' is held to refer to a position wherein the first reservoir is disposed circumferential around the lid in a surrounding manner as supported by the specification."

41. The NasalFresh Device does not include "an openable lid, wherein the first reservoir is disposed about the lid," as recited in Claim 1 or "an openable lid assembly surrounded by the first reservoir," as recited in Claim 10, as those limitations would have been understood by a person of ordinary skill in the art at the time of the alleged invention in light of the specification and prosecution history.

42. For example, as depicted below, the NasalFresh Device includes a removable cap that comprises a single piece of injection-molded plastic that rests on, and snaps to fit with, the top of the upper, saline reservoir of the NasalFresh Device. The removable cap of the NasalFresh Device is not an "openable lid" or an "openable lid assembly" as those limitations would have been understood by a person of ordinary skill in the art at the time of the alleged invention. Rather, the cap is removable, and there is no hinge or other attachment between the cap and any other component of the NasalFresh MD device as a person of ordinary skill in the art would have understood to be required by the claim language.



43. Also, as a further example, the cap of the NasalFresh Device is not "surrounded by" the upper, saline reservoir as that term would have been understood by a person of ordinary skill in the art at the time of the alleged invention of the '953 Patent in light of the specification and prosecution history of the '953 Patent. Rather, it rests on, and snaps to fit with, the top of the reservoir.

44. In addition, as a still further example, the cap of the NasalFresh Device does not interoperate with any other component of the NasalFresh Device. The NasalFresh Device does not use "capsules" or "cartridges," and thus the cap plays no role in opening or authenticating such capsules or cartridges.

45. With respect to the "openable lid assembly" limitation of Claim 10, the cap is not a multi-part component and therefore not an "assembly" as that term would have been understood by a person of ordinary skill in the art at the time of the alleged invention in light of the specification and prosecution history of the '953 Patent. Instead, the cap is a single piece of injection-molded plastic.

46. Accordingly, for at least for the above reasons, the NasalFresh Device does not infringe Claims 1 and 10 (and all dependent claims) of the '953 Patent, either literally or under the doctrine of equivalents.

47. A judicial determination is necessary and appropriate so that MTB may ascertain its rights regarding the claims of the '953 patent and with regard to manufacturing, marketing, and selling the NasalFresh Device.

**COUNT II**
**(Declaratory Judgment of Invalidity of U.S. Patent No. 12,178,953)**

48. MTB realleges and incorporates by reference the allegations of paragraphs 1-47, as if fully set forth herein.

49. MTB seeks a judgment from this Court that the '953 Patent is invalid.

50. A present, genuine, and justiciable controversy exists between MTB and RhinoSystems concerning, *inter alia*, the validity of the '953 Patent.

51. Each claim of the '953 Patent is invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability including, without limitation 35 U.S.C. §§ 102, 103, and/or 112, and/or non-statutory double patenting, and any rules, regulations, and laws pertaining thereto.

52. In addition, but without limitation, the claimed invention of the '953 Patent was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; and/or the claimed invention was described in an issued patent, or in an application for patent published or deemed published, in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

53. In addition, the subject matter sought to be patented in the '953 Patent and the prior art are such that the differences between the claimed invention and the prior art would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. The '953 Patent therefore is invalid under 35 U.S.C. §§ 102 and/or 103.

54. The '953 Patent also is invalid under 35 U.S.C. § 112. For instance, the claims of the '953 Patent are indefinite.

55. The Court should enter a declaratory judgment that the claims of the '953 Patent are invalid for failing to comply with one or more of the conditions and requirements for patentability under 35 U.S.C. §§ 102, 103, and 112, and/or non-statutory double patenting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. A judgment declaring that MTB does not infringe, and has not infringed, the '953 Patent in any manner;

b. A judgment declaring that the '953 Patent is invalid and unenforceable;

c. An award to MTB of all its costs in this action;

d. An order finding that this is an exceptional case, and an award to MTB of its reasonable attorneys' fees under 35 U.S.C. § 285; and

e. Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff Michael Todd Beauty LP hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: June 17, 2025 | BAYARD, P.A. |
| | |
| | */s/ Stephen B. Brauerman* |
| OF COUNSEL | Stephen B. Brauerman (#4952) |
| | Ronald P. Golden III (#6254) |
| Edward C. Flynn | 600 N. King Street, Suite 400 |
| ECKERT SEAMANS | Wilmington, DE 19801 |
| CHERIN & MELLOTT, LLC | Telephone: (302) 655-5000 |
| 600 Grant St. | sbrauerman@bayardlaw.com |
| 44th Floor | rgolden@bayardlaw.com |
| Pittsburgh, PA 15219 | |
| (412) 566-6984 | *Attorneys for Plaintiff* |
| eflynn@eckertseamans.com | *Michael Todd Beauty LP* |

Philip E. Levy
ECKERT SEAMANS
CHERIN & MELLOTT, LLC
600 Grant St.
44th Floor
Pittsburgh, PA 15219
(412) 566-6043
plevy@eckertseamans.com

Theodore Y. McDonough
ECKERT SEAMANS
CHERIN & MELLOTT, LLC
2000 Lenox Dr.
Lawrenceville, NJ 08648
(609) 989-5096
tmcdonough@eckertseamans.com